IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSE CARMONA, §
 §
       Plaintiff, §
 §
v. § CIVIL ACTION NO. H-17-3586
 §
LEO SHIP MANAGEMENT, INC., §
 §
       Defendant. §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jose Carmona, filed this action on April 10, 2017, in the 151st Judicial District Court of Harris County, Texas, against defendant, Leo Ship Management, Inc. ("LSM" or "Defendant"), asserting a claim for negligence under the Longshore and Harbor Workers' Compensation Act.[1] On November 22, 2017, Defendant filed a Notice of Removal (Docket Entry No. 1). Pending before the court is Defendant Leo Ship Management, Inc.'s Rule 12(b)(1) Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum in Support Thereof ("Defendant's Motion to Dismiss") (Docket Entry No. 3). On February 19, 2018, Plaintiff filed Plaintiff Jose Carmona's Response in Opposition to Defendant Leo Ship Management, Inc.'s Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ("Plaintiff's Response") (Docket Entry

---

[1]Plaintiff's Original Petition and Request for Disclosure ("Plaintiff's Original Petition"), Exhibit C to Notice of Removal, Docket Entry No. 1-3.

No. 10). For the reasons stated below, the court concludes that the Motion to Dismiss should be granted.

## I. Background

Plaintiff was a stevedore working aboard the M/V KOMATSUSHIMA STAR.[2] Defendant was the vessel manager for the M/V KOMATSUSHIMA STAR and is a Philippine corporation with its principal place of business in Manila, Philippines.[3] Defendant managed and staffed the vessel pursuant to a Ship Management Agreement with the vessel owner, Lua Line S.A.[4] Plaintiff worked for John Tim Enterprises, LLC but alleges that the crew of the vessel "were employed by the Defendant" and "maintained active control over the vessel and the work of the longshoremen, including Plaintiff."[5] Plaintiff alleges that he was working in the vessel's hold placing straps on bundles of pipes for discharging activities when one of the bundles fell and injured his ankle.[6] Plaintiff observed a vessel crewmember inspect the cargo to be discharged and turn over the hold to

---

[2]Verification of Jose Carmona ("Carmona Verification"), Exhibit B to Plaintiff's Response, Docket Entry No. 10-2, p. 2.

[3]Unsworn Declaration of Felix Corteza Andrada Pursuant to 28 U.S.C. § 1746 ("Andrada Declaration"), Exhibit 1 to Defendant's Motion to Dismiss, Docket Entry No. 3-1, p. 1.

[4]See Ship Management Agreement, Exhibit C to Plaintiff's Response, Docket Entry No. 10-3.

[5]Plaintiff's Original Petition, Exhibit C to Notice of Removal, Docket Entry No. 1-3, p. 3 ¶ 6.

[6]Id. ¶ 7.

Plaintiff for discharging.[7] Plaintiff alleges that the bundle was not properly stowed or bundled and that Defendant's negligence caused Plaintiff's injuries.[8] Defendant argues that the court lacks personal jurisdiction over it.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

### A. Standard of Review

Dismissal for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). When a foreign defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S. Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" Id. (quoting Wilson v. Belin, 20 F.3d 644, 648 (5th Cir.), cert. denied, 115 S. Ct. 322 (1994)). "In making its determination, the district court may consider the

---

[7]Carmona Verification, Exhibit B to Plaintiff's Response, Docket Entry No. 10-2, p. 2.

[8]Plaintiff's Original Petition, Exhibit C to Notice of Removal, Docket Entry No. 1-3, pp. 3-4 ¶¶ 7-10.

contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" Id. at 344 (quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)). The court must accept as true the uncontroverted allegations in the plaintiff's complaint and must resolve in favor of the plaintiff any factual conflicts. Guidry v. United States Tobacco Co., Inc., 188 F.3d 619, 625 (5th Cir. 1999). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. Panda Brandywine Corp. v. Potomac Electric Power Co., 253 F.3d 865, 869 (5th Cir. 2001). "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law to be determined . . . by th[e] Court." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 418 (5th Cir. 1993).

B. Applicable Law

A federal district court may exercise personal jurisdiction over a nonresident defendant if "(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S. Ct. 68 (2010). Since the Texas long-arm statute extends as far as

constitutional due process allows, the court considers only the second step of the inquiry. Id.

Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 66 S. Ct. 154, 158 (1945) (quoting Milliken v. Meyer, 61 S. Ct. 339, 343 (1940)). Once a plaintiff satisfies these two requirements, a presumption arises that jurisdiction is reasonable, and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2185 (1985). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" McFadin, 587 F.3d at 759.

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001). Because the parties agree that the court does not have general personal jurisdiction over Defendant, the relevant

inquiry is whether the court can exercise specific jurisdiction over Defendant.[9]

A court may exercise specific jurisdiction when the alleged injuries arise from or are directly related to the nonresident defendant's contacts with the forum state. Gundle Lining Construction Corp. v. Adams County Asphalt, Inc., 85 F.3d 201, 205 (5th Cir. 1996) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984) and Quick Technologies, 313 F.3d at 344). To determine whether specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." Gundle Lining, 85 F.3d at 205. Even a single contact can support specific jurisdiction if the defendant "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Burger King, 105 S. Ct. at 2183. "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." Ruston Gas, 9 F.3d at 419 (citing World-Wide Volkswagen Corp. v. Woodson, 100 S. Ct. 559, 567 (1980)).

---

[9] See Plaintiff Jose Carmona's Objections and Responses to Defendant Leo Ship Management, Inc.'s Jurisdictional Interrogatories, Requests for Production and Requests for Admission, Exhibit 1 to Defendant Leo Ship Management, Inc.'s Reply Brief in Support of Rule 12(b)(1) Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 11-1, p. 5 Q. 3, p. 6 Q. 3.

There are three parts to a purposeful availment inquiry. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Sangha v. Navig8 ShipManagement Private Limited, 882 F.3d 96, 103 (5th Cir. 2018) (citing Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.")). Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Id. (citing Walden, 134 at 1123). Finally, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. Burger King, 105 S. Ct. at 2183. A defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there. Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575 (Tex. 2007) (citing Burger King, 105 S. Ct. at 2181-85). Since specific jurisdiction is claim specific, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274 (5th Cir. 2006).

C.  **Analysis**

1. <u>The Parties' Arguments</u>

Defendant argues that the court may not exercise personal jurisdiction because:

1. Defendant is not a resident of Texas;

2. The causes of action alleged by Plaintiff neither arise from, nor are they connected with, any purposeful acts or transactions that Defendant performed in Texas;

3. Defendant has not purposefully availed itself of the privilege of conducting activities within the State of Texas, and, as a result, has not invoked the benefits or protections of the laws of the State of Texas;

4. Defendant does not have the requisite minimum contact with Texas such that it would have fair warning that a particular activity might subject it to jurisdiction in a court in this State; and

5. The exercise of personal jurisdiction over Defendant would offend traditional notions of fair play and substantial justice, in violation of the United States Constitution.[10]

Defendant argues that it entered the forum randomly, fortuitously, and in a highly attenuated manner because, as the manager of the M/V KOMATSUSHIMA STAR, it did not control the movements and activities of the vessel and did not direct the vessel to go to Texas.[11] Defendant cites <u>Asarco, Inc. v. Glenara, Ltd.</u>, 912 F.2d 784 (5th Cir. 1990), for the proposition that "the

---

[10]Defendant's Motion to Dismiss, Docket Entry No. 3, pp. 3-4.

[11]<u>Id.</u> at 5-6.

activities of a vessel cannot form the basis of jurisdiction over her owner, operator, manager, or others who do not themselves have contact with the forum state."[12] Plaintiff responds that the court has specific jurisdiction because Defendant committed a tort in Texas. Plaintiff alleges that "Defendant breached its turnover duty, active control duty, and duty to intervene while the vessel was docked at Greens Port Terminal."[13] In support, Plaintiff cites this court's opinion in Mylonakis v. M/T GEORGIOS M., 909 F. Supp. 2d 691, 704 (S.D. Tex. 2012), which distinguished Asarco.[14] Plaintiff also argues that "[a]lthough there is no evidence that the Defendant had a hand in planning the trip to Greens Port Terminal, the Defendant did knowingly send its crew to Texas"[15] and that Defendant's lack of control over the movement of the vessel does not defeat personal jurisdiction.[16] Finally, Plaintiff argues that exercising personal jurisdiction will not offend traditional notions of fair play and substantial justice.[17]

In Asarco cargo was loaded in Australia and lost at sea before the vessel ever reached its destination in Louisiana. 912

---

[12]Id. at 6.

[13]Plaintiff's Response, Docket Entry No. 10, p. 5.

[14]Id. at 6-7.

[15]Id. at 6.

[16]Id. at 4-7.

[17]Id. at 4-10.

F.2d at 785. "Amongst the lost cargo was 10,278 metric tons of elura lead concentrates, carried under a bill of lading held by and endorsed to ASARCO, a New York corporation, and insured by Hansa Marine Insurance, a Swedish corporation." Id. The vessel had been time-chartered to a third party, which directed the vessel to carry the cargo to Louisiana. Id. The vessel's manager was a Hong Kong corporation, Anglo-Eastern Management Services Limited ("Anglo-Eastern"). Id. The plaintiffs ASARCO and Hansa Marine Insurance sued the owner and the manager of the vessel in federal court seeking to recover damages for the lost cargo. Id. Anglo-Eastern and the vessel's owner successfully argued to the Louisiana district court that it lacked personal jurisdiction over them. The Fifth Circuit affirmed, observing the general rule that "[e]ven a single, substantial act directed toward the forum can support specific jurisdiction," but finding that the plaintiff had failed to show that either the vessel's owner or Anglo-Eastern had directed an act toward Louisiana. Id. at 786.

In Mylonakis the plaintiff, Ioannis Mylonakis, served as chief engineer onboard the M/T GEORGIOS M. The M/T GEORGIOS M. was "owned by Helford, a business entity organized under the laws of Liberia that did not have a regular place of business in Texas" and managed and operated by STYGA, a business entity organized under the laws of Panama that did not have a regular place of business in Texas. Id. at 700. At the port of Texas City, Texas, the

United States Coast Guard ("USCG") initiated an investigation of unlawful discharge from the M/T GEORGIOS M. that caused the United States to file criminal charges against STYGA and the plaintiff for the unlawful discharge of oily waste from the M/T GEORGIOS M. Id. at 701. The USCG required the crew members of the vessel, including plaintiff, to remain in the Southern District of Texas until the criminal investigation concluded. Id. STYGA and Helford entered into an agreement with the USCG pursuant to which the United States agreed to release the M/T GEORGIOS M. in exchange for STYGA and Helford's agreement to provide care, salaries, lodging, and transportation for those crew members. Id. STYGA pled guilty to an Information that charged it with violation of the Act to Prevent Pollution from Ships ("APPS"). Id. at 702.

Mylonakis brought suit against Helford and STYGA, among others, for violation of the APPS, general maritime claims for unseaworthiness, negligence, intentional misrepresentation, breach of the duty to defend, maintenance and cure, double wages under 46 U.S.C. § 10313, and pendent state law claims for malicious prosecution, breach of fiduciary duty, and gross negligence. Id. at 699. Citing Asarco Helford and STYGA argued that the claims against them should be dismissed for lack of personal jurisdiction because they had no control over the vessel's ports of call. Id. at 708. This court distinguished the case from Asarco reasoning, in part, that

> Here, unlike <u>Asarco</u>, plaintiff's claims against STYGA and Helford are not all based on acts committed outside the forum. Instead, Plaintiff alleges that the two corporate defendants were responsible for the MARPOL/APPS violations found aboard the M/T GEORGIOS M. while the vessel was physically present in Texas, and that these defendants and/or their agents committed other acts in Texas that harmed him. If the nonresident corporate defendants committed the liability-producing acts while physically present in the forum state, such conduct will support personal jurisdiction in lawsuits arising from those acts.
>
> . . .
>
> Thus, if STYGA and Helford are responsible for the allegedly tortious actions of the vessel's crew while in Texas, they are subject to personal jurisdiction in Texas.

<u>Id.</u> at 708-09.

The court extensively analyzed Helford and STYGA's contacts with Texas. For example, "STYGA and Helford's acknowledgment that the vessel presented an improperly maintained Oil Record Book to the USCG in Texas," and that six of the plaintiff's claims were "based on acts and communications that occurred in Texas as a result of the USCG's investigation and discovery of MARPOL/APPS violations onboard the M/T GEORGIOS M." <u>Id.</u> at 710 and 712. The court held that the defendants purposefully availed themselves "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" by entering into the Agreement on Security with the USCG and the United States that included an obligation to provide the care, salaries, lodging, and transportation for M/T GEORGIOS M. crew members who were retained

in this District. Id. at 712 (citing Burger King, 105 S. Ct. at 2183).

In Sangha, 882 F.3d at 98, Captain Sangha worked as a mooring master for the defendant, Navig8. Captain Sangha's vessel collided with another ship and Navig8 declined to renew his employment. Id. at 98-99. Captain Sangha obtained new employment as a mooring master of the "Songa Pearl" with Marine Consulting LLC. Id. at 99. Months later, Navig8 learned that Captain Sangha would be maneuvering in the Gulf of Mexico in a ship-to-ship transfer of fuel alongside his former vessel with Navig8. Id. Navig8's Safety Manager sent an email to Captain Sangha's supervisor informing him that Navig8 would prefer not to have Captain Sangha in charge of maneuvers involving Captain Sangha's former vessel because the collision incident was still under legal proceedings. Id. Marine Consulting terminated Captain Sangha's contract and Sangha sued Navig8 for various tort claims, including tortious interference with contract. Id. The district court dismissed Captain Sangha's claims for lack of personal jurisdiction over Navig8. Id. The Fifth Circuit agreed that Captain Sangha did not allege sufficient contacts to show Navig8 was subject to specific jurisdiction in Texas. Id. at 103. The court reasoned:

> The contacts Cpt. Sangha identifies to support specific jurisdiction—email communications from two Navig8 representatives located outside the country to Cpt. Sangha's then-supervisor in Alabama, an employment contract between Cpt. Sangha and Marine Consultants allegedly confected in Houston, that the email communications were targeted at a contract formed in

> Texas, and that the emails concerned work that was to be performed in Texas—are legally insufficient to support a finding of specific jurisdiction. Navig8's contacts with the state have to be purposeful "and not merely fortuitous." . . . Even though Navig8's email communications happened to affect Cpt. Sangha while he was at the Port of Houston, this single effect is not enough to confer specific jurisdiction over Navig8.
>
> . . .
>
> The Supreme Court recently clarified the form that forum contacts must take in intentional tort cases for the effects to be applicable, reiterating that mere injury to a forum resident is not a sufficient connection to the forum. Walden, 134 S. Ct. at 1125. "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." Id. The proper question is not whether Cpt. Sangha experienced an injury or effect in a particular location, but whether Navig8's conduct connects it to the forum in a meaningful way. Cpt. Sangha's presence in the Gulf of Mexico/Port of Houston is largely a consequence of his relationship with the forum, and not of any actions Navig8 took to establish contacts with the forum. Accordingly, Cpt. Sangha has failed to establish a prima facie case of personal jurisdiction.

Id. at 103-04. The court also explained that "[t]he record indicates that Navig8 was likely aware that the ship-to-ship transfer between its vessel and the Songa Pearl would take place in the Gulf of Mexico right outside of Houston. . . . Even considering this, however, the allegation that the 'effects' of Navig8's emails were felt in Houston are nothing more than fortuitous." Id. at 104 n.3 (citing Walden, 134 S. Ct. at 1125).

2. Purposeful Availment Inquiry

Plaintiff has not established that Defendant's contacts with Texas satisfy the three parts of purposeful availment under any of

Plaintiff's theories of tort liability -- breach of the "turnover duty," the "active control" duty, and the "duty to intervene." Plaintiff alleges that Defendant breached these duties when it allowed Plaintiff to discharge the pipes.[18]

First, like Anglo Eastern in Asarco who had no control over the lost cargo's destination, Defendant had no control over where the cargo was to be discharged.[19] Nothing in the Ship Management Agreement establishes that Defendant could control the vessel's location.[20] Defendant cannot expect to be haled into court in each State in which cargo is discharged under orders of a third party. See Walden, 134 S. Ct. at 1122 (contacts between a third party and the forum do not satisfy the minimum contacts inquiry). Plaintiff argues that Defendant purposefully availed itself of the privilege of conducting business in Texas because "[a]s in Mylonakis, Plaintiff has alleged that the Defendant and its agents in this case committed torts against Plaintiff while docked at Greens Port Terminal in Harris County, Texas."[21] But Plaintiff ignores the Mylonakis defendants' vast number of contacts with Texas under which the tortious conduct arose that allowed the court to exercise

---

[18]Id. at 5.

[19]Andrada Declaration, Exhibit 1 to Defendant's Motion to Dismiss, Docket Entry No. 3-1, pp. 2-3 ¶¶ 20-21, 24.

[20]See Ship Management Agreement, Exhibit C to Plaintiff's Response, Docket Entry No. 10-3, pp. 3-9.

[21]Plaintiff's Response, Docket Entry No. 10, p. 7.

specific jurisdiction over the defendants. In <u>Mylonakis</u> the defendants committed crimes directed at Texas and entered agreements with the USCG and the United States that had a direct effect on this District. The defendants deliberately directed their activities at Texas with foreseeable consequences in Texas.

Second, Defendant's contact with Texas was merely fortuitous or random rather than purposeful. See <u>Walden</u>, 134 S. Ct. at 1123; <u>Burger King</u>, 105 S. Ct. at 2183. Plaintiff acknowledges that Defendant did not have control over the vessel's location or ports of call.[22] Instead, Plaintiff argues that "Defendant did knowingly send its crew to Texas. . . . Defendant admitted it was aware prior to the incident that the vessel would be travelling [sic] to Greens Port Terminal in Harris County, Texas, and that cargo would be discharged from the vessel while docked."[23] However, in <u>Sangha</u> the Fifth Circuit held that knowledge of where an injury might occur is not sufficient to support specific personal jurisdiction over a defendant. 882 F.3d at 104 n.3.

Finally, Plaintiff has not shown that Defendant had any other significant contacts with Texas or sought any benefit, advantage, or profit by availing itself of Texas.[24] Plaintiff has therefore

---

[22]See <u>id.</u> at 6 ("there is no evidence that the Defendant had a hand in planning the trip to Greens Port Terminal").

[23]<u>Id.</u> (citing Defendant's Responses to Plaintiff's Jurisdictional Discovery Requests, Exhibit E to Plaintiff's Response, Docket Entry No. 10-5, p. 7, Request for Admission Nos. 5-6).

[24]The unchallenged Unsworn Declaration of Andrada describes LSM's lack of connection with Texas at length. See Andrada
(continued...)

failed to establish that Defendant directed an act toward Texas or otherwise purposefully availed itself of the privilege of conducting activities in Texas. See Asarco, 912 F.2d at 786. Because neither the injury nor the alleged tort was a consequence of any actions Defendant took to establish contacts with Texas, the claim does not arise out of or relate to Defendant's contacts. See Helicopteros, 104 S. Ct. at 1872; Sangha, 882 F.3d at 104. Therefore, Plaintiff has not met its burden of establishing a prima facie case of personal jurisdiction.

3. Whether Exercise of Personal Jurisdiction Over the Defendant is Fair and Reasonable

Because the court concludes that Defendant does not have sufficient contacts in Texas to support personal jurisdiction, the court need not analyze whether exercise of personal jurisdiction over Defendant is fair and reasonable. Accordingly, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction will be granted.

III. Conclusions and Order

For the reasons explained above, the court concludes that Plaintiff has not carried his burden of establishing facts capable of supporting the court's exercise of personal jurisdiction over

---

[24](...continued)
Declaration, Exhibit 1 to Defendant's Motion to Dismiss, Docket Entry No. 3-1, pp. 1-3, ¶¶ 4-17, 26.

Defendant LSM on Plaintiff's negligence claim. Accordingly, Defendant Leo Ship Management, Inc.'s Rule 12(b)(1) Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 3) is **GRANTED**, and this action will be dismissed with prejudice.

**SIGNED** at Houston, Texas, on this 28th day of March, 2018.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE